The next case for argument is 23-1532, Worldwide Door Components v. United States. And what the panel would like to do here is we asked for additional briefing on a matter, and we invited the United States to give us some briefing on a standard of review question. So that doesn't fit into the merits question. And so, Ms. Burke, if you would come and use your five minutes at the outset, we think that would make most sense logically on how to proceed, and the other side can disagree or agree with what you say on your limited issue, if they wish. Appreciate your coming. Of course, thank you for your effort here. But in light of all of the recent opinions and litigation concerning standard of review and all these administrative law issues, we're being very careful here in terms of what we say about these matters. So are we. So I'll start with the first question that the court asks. To which of Commerce's decisions does this court owe deference? And the answer, I think, and all the parties agree, is that it's the first. It's Commerce's original scope ruling to which the court owes deference or to which the court applies its standard of review. But what if we agree with the trial court that there's no substantial evidence for that decision? Then your remand determination, will we look to that for substantial evidence? If you agree with the trial court, then I think you would probably go through the remands one by one. One by one. So if we agree with them on the first one, that there wasn't substantial evidence, then we look at the second one and we have the same APA review that he does. And if we find substantial evidence and disagree, we still use the substantial evidence review on that second one. Well, what the court's doing is what the appellant has asked the court to do, which is to determine whether the first remand order was incorrect. So if you determine that the first remand order was actually correct, then, I mean, yeah, you go one by one, except that the agency hasn't articulated, doesn't stand behind remand number two, three, or four. So it's sort of like a different exercise than what you're doing. But the answer to the question is... I've lost count. Is two, three, and four, are those the ones that they filed under protest? Yeah, so it's actually one. So there's the original scope ruling and then the first remand determination, second remand determination, third remand determination. Right. Two or three are what they did under protest. Maybe I'm just being unclear. Maybe I used the wrong words. If we agree with him that the original scope ruling lacks substantial evidence but disagree that the first remand determination lacks substantial evidence, that's the way we do it. So if you agree... So if we look at the first scope ruling for substantial evidence, he found it didn't have any, and he sent it back. Right. Let's say you agree with that. Let's say we agree with that. But then your remand ruling comes back. We still just apply the same standard of review to that one. If we agree with him on the first one, then we move on to the first remand.  And if we think there's substantial evidence, then we reverse them Right. The sort of pickle is that there is no agency determination in the sense that the agency doesn't stand behind that second determination. But obviously what you're doing is you're looking at the record to determine whether there's substantial evidence. But the remand determination certainly is more fulsome in its explanation of the sub-assemblies and its reasoning and the evidence it relies on than the original scope ruling. Right. Well, the Court of International Trade would disagree with that, but I'm not going to get into the merits of it. No, no, no, no. But we don't have to pay. The Court of International Trade doesn't get any deference either on that point. We just look at that ruling. I mean, I think under your standard of review, technically what you should be doing is if you disagree, if you agree that the court correctly remanded it. Let me just ask you this. I'm going to ask you this hypothetically. It may sound like it's a position. It may or may not be. The first, the original scope order is not good enough. It doesn't explain its reasoning. We agree with the trial court that there's no substantial evidence that this was a sub-assembly in that order. The second, the first remand determination, will you go through that all? And it's not under protest, I don't think, the first remand. It's not, no. Right. And so we disagree with the trial court, and we find that supported by substantial evidence. There's nothing special about us just doing the same review on that second one. We do the first one. We affirm and say, yes, lack of substantial evidence. And then we get to the second one, and we say, no, you're wrong. There is substantial evidence. And my real question is, do we even have to decide if the first one, lack of substantial evidence, if we think it doesn't really matter because the second one, and not second remand determination, the second decision from Commerce. Yeah, no, I think you do. Okay. Because that's what you've been asked to do. Okay. So that wasn't under protest. Can I just ask you a general question? It seems like we have at least three buckets. We've got cases where the Commerce gets a remand from the CIT and then does essentially what CIT wants, and there's no under protest language. Then there's a remand where you get under protest language. And the third bucket is where I think sometimes the government decides to come up here and appeal it, right? Right. So is it the government's view that the remand that's not under protest is the one that requires substantial deference to what Commerce did, but if they file it under protest, we shouldn't give that deference? And if they come up here and appeal it, we certainly shouldn't give deference to something they're disagreeing with that they said? Well, it raises the question of whether this court has held that Commerce actually has to say that a decision is or is not under protest. And the verage could be read as suggesting that anytime Commerce disagrees but does it anyway, it has to say that it's doing so under protest. I don't really think it does have to do that. But do you agree that if you say under protest that we should not apply the deferential standard to Commerce to what they filed under protest? I do, but I think you know whether Commerce stands behind the decision or not if we are a party to the appeal, you know, if we defend it on appeal. Oh, but I'm talking about if you don't defend it. If we don't defend it on appeal, then I think you can assume, even if we don't say it's under protest, that we do not defend the decision below, nor have we received authorization to appeal it. I'm sorry, maybe I'm not clear on the answer. Okay, let's take the situation where, let's take this case and say you never put under protest and you don't come up here on appeal. Are we supposed to therefore assume that the deference owed to the Commerce Department includes deference to the second and the third remand because they didn't put the under protest? I mean, this is just confusing to us on appeal. We're the ones that have to decide what the standard of review is. You're telling us not to apply a deferential standard to something under protest, right? Right. Okay, but now are you saying that even if you don't say it's under protest, we should still not? No, I didn't mean to confuse it. In Commerce cases, Commerce follows the holding in Verage, and it always says that it is under protest if it is in fact under protest. So in terms of the standard of review that's applied, the government is telling us if it's not under protest, then we should apply whatever the deferential standard or whatever the standard is to the Commerce opinion. But if it's under protest, then we should not. Well, except it depends on what the appellant is asking you to do. So if the appellant is concerned about the first remand order, which it is in this case, then you have to go back to the beginning to determine whether that decision was supported by substantial evidence to figure out whether the remand order was correct or not. So it really depends upon the way that the appeal is framed. When we're talking about deferential standard of review, are we just talking about the APA standard that's in here, that it's arbitrary, capricious, contrary to law, and not supported by substantial evidence? Well, this court in scope proceeding... I understand we have this language about the special deference. I have no idea what that language means. So... It's not our deference, that's for sure, right? It is not our deference, although you could consider it as sort of our adjacent, but it is not our deference. We certainly haven't asked for our deference. We're not a party to the appeal. We haven't asked for anything. In this context, if I understand what you're saying, is if they had come in and only focused on the second and third remand determinations and said those decisions by Commerce lacked substantial evidence, then that would be what we would look at, is we would be looking at whether Commerce's decisions lacked substantial evidence, whether Commerce actually wanted to issue them or not, if they hadn't focused on the earlier ones. Yeah, I think that the significant deference or substantial deference language in all of the scope cases, I sort of see it as similar to when this court acknowledges that the Court of International Trade has a specific expertise and they acknowledge it. A scope proceeding is unusual in the sense that there is language that is arrived at at the very beginning that then controls sometimes decades of proceedings. And so it's just an acknowledgment that Commerce wrote this language. We acknowledge that Commerce is the expert. At the end of the day, obviously, you're bound by the standard of review, and the substantial evidence standard of review is really quite high. And so I think it sort of... That was my next real question about this case, which is dividing a scope. And I think the parties may have been a little more definitive or detailed than you were in this, because I read the government as just saying, under scope review, substantial evidence, and lawfulness. The other parties, I think, to a certain extent, citing rural polo and some of our other cases, tease out that it's not entirely deferential. I mean, our cases seem to say, yes, deference is owed to the Commerce Department on scope rulings, except that if we're talking about interpretation questions, then I understand our cases to leave that to be kind of a de novo. No, and I agree with that. I think we were answering the sort of narrow question of what appears to be an issue in this appeal. But, yes, when you're reviewing a scope determination, the very first thing you do is look at the scope language. If the scope language is dispositive, that answers the question. That question is considered de novo, and I think the court has been... So what the scope language means is it's more of a legal question. Yes. Like, we look at this, and whether the scope language includes subassemblies or not is a legal question. Well, that's what this court has said, that it's a legal question first. And this case is pretty plain. Whether something is a subassembly or not is a fact question. And so the first is de novo, the second is substantial evidence. Is that your view? Right. But I would suggest that these cases are often quite complicated, so we're not... Well, can I ask you about this case? Because I'm having a real trouble just differentiating between questions of fact and questions of law in terms of review. So, yes, we construe this is what you are, subassemblies, and this is finished products in this scope. Isn't it also an interpretive question as to whether these door thresholds constitute subassemblies? Because we're defining what the subassemblies are or whether they're finished product, because it's a definitional thing. Does this come under paragraph A or B? And is that a question of law and interpreting language of the scope, or is that a question of fact? So I hope this isn't too frustrating, but I'm not authorized to answer that question. What I can say, though, is... Well, the problem for us is we are. And so I guess I'm disappointed because we may need to answer that question, and if you can't be helpful, you may not like the answer. Well, and I think Commerce recognizes that when it makes its recommendation whether to appeal, and certainly the Department of Justice recognizes that when we seek authorization. So what can we answer? Well, what I will say is that the exercise that Commerce performs is done under the regulation, and the regulation has since changed, but let's talk about the old regulation. It's pretty clear under this court's case law and the regulation that Commerce looks to the original, the scope language first, and then if it is ambiguous, then Commerce applies the K1 and K2 factors, which are sources, right? And so once Commerce arrives at a conclusion, that conclusion is always about those sources. So it's, in my opinion, usually a substantial evidence question. But I say that in a vacuum because I really am not speaking about the facts of this case. So you're not prepared to tell us, to take a position on whether or not, whether or not door thresholds come within the sub-assembly or the finished products as a question of law or fact? I'm not, but I will say that what we said in our brief is that it seems to us that this is a substantial evidence question. Thank you. Okay, thank you. Did I already call up this case? Did I call the case? I hope I did. I'm sorry. Did I call the case? 23-1532 World Wide Door v. United States? I believe you did. Thank you. All right. Sorry, I had an attack. Ms. Toledo? Toledano. Okay. You've got more work to do than Ms. Burke, but could you start with the question we left her with? What is your position on whether the question here of whether the door threshold comes within, this is just on a standard review question, where it ends? And tell us where and why. The question that you post as to whether the product at issue here is a subassembly or a part versus finished merchandise is a question of fact. And I'll quote because I think the parties are remarkably aligned on the standards that govern this case, and so I'll actually quote from the Applease Supplemental Brief, quoting from China Custom Manufacturing, when commerce makes a factual determination, this is on page two, that specific language in the scope describes or does not describe a particular product and the product is included or excluded from the scope as a result. Commerce is entitled to substantial deference. I'm sorry. This is their Supplemental Brief, and it's at page two. Citing China Custom Manufacturing. Oh, that's in the second. But then they go on to say, to cite, look at the next paragraph, because it says, it cites Meridian Products. The question of whether the unambiguous terms of the scope control the inquiry or whether some ambiguity exists is a question of law that we would need to know about. And then they cite DeFirco, which says the court gives substantial, I'm sorry, not the case. The court gives substantial deference to commerce's interpretation of its own orders, but a scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms. That's right. So why is this not that, where it's interpreting subassembly incorrectly to include these door thresholds? I think there are two parts to what commerce did here and two parts to the court's analysis. There is a question in the abstract about how we interpret scope language. That, I think we all agree, is a legal question that the court reviews de novo. The question there as it relates to the subassembly framework is what does subassembly mean, which the court has recognized on a number of occasions has been highly litigated and well established at this point. That's no longer an open question. There's an established framework. But the question of what that word means in the context of the scope when it first came up was indeed a legal question. As to whether this product satisfies the definition that commerce has interpreted, the application of record facts to that legal standard, that's a substantial evidence question. Any patent lawyer? Are you a patent lawyer? I'm not at all. Oh, okay, because I was going to ask you if your analogy that you're drawing out is to claim construction vis-a-vis infringement, because it sounds a little like that, which is claim construction, you're consuming the claims and what they mean, question of law, but whether or not the actual device at issue comes within the scope of those definitions is a question of fact. Now, that's patent law. That's not administrative law.  I liken it in my world to contract interpretation. I hesitate to say statutory interpretation in light of Flip or Bright, which is obviously very separate and apart from this case, but I think this is a familiar concept in the law, that when we're interpreting a legal written instrument and we're trying to determine what the words of that instrument mean, that's a legal question. And so for sub-assemblies, that's been done. That has been very done. Both by the Commerce Department, by the Trade Court, and by us, and that's intermediate assemblies that are intended for installation in a final product. That's right. Something less than the very final finished good. When we were doing that legal conclusion of what sub-assemblies meant, that's a de novo review. We have precedent binding us on that. So now all we're looking at is whether the products at issue here are factually within that legal definition. That's exactly right. So we're going to look at Commerce's initial—I'm going to mess up. I'm going to try not to call them first and second. Commerce's initial ruling and its first remand determination. That's right. And all of them, honestly, but the first two are the ones you want us to concentrate on, I guess. Certainly. And I do agree with you that determination is laid out in the original determination. We can see, of course, that it's much more fleshed out in the first remand determination for obvious reasons. Commerce relied initially on the fact that door thresholds are explicitly in scope, in addition to the fact that there is substantial record evidence that they are incorporated into door assemblies. Let's say we—because there's three possible things at issue here. There's the intended for installation and the final product. There's the final—and maybe I'm messing them up. There's the intended use, and then there's the subassembly. And let's just assume we agree with the trade court that Commerce's determination on the first two was incorrect, that they couldn't have fallen in those categories, and that the only possible one is subassembly. And so what in their initial scope ruling is substantial evidence that this is a subassembly? Because it doesn't seem like it was the—it certainly was mentioned, but it doesn't seem like it was the focus of the first scope ruling. It was not the focus, but it is encompassed. And first, Commerce, of course, has to decide which aspects of the scope ruling request that it's going to recite. And so part of that is laid out in just the aspects of the scope ruling request that Commerce copied into that first ruling, which include the fact that door thresholds are specifically designed to fit door units, meaning they can only be used in tandem with a door and only serve a purpose with that door. There is the laboratory report that was submitted with Worldwide. Can I just be a little nitpicky with you? And can you point me specifically in that scope ruling where they make this conclusion and what evidence they're pointing to? Okay. It starts at 969, I think, of the appendix, if I'm looking at the right one. Is this the first or the second appendix? This is the December 2018. So this is the initial—I think. That's right. The December 2018 is the initial one. That's right. So in the initial discussion, the actual discussion, the parts in the subassemblies framework, I think, is at appendix numbers 1001 to 1003. It is, as you said, an abbreviated discussion, but the discussion does rely on the fact that door thresholds, again, are— we find that the door thresholds—this is at page 34 of that opinion— which constitute aluminum extrusion components attached to non-aluminum extrusion components may also be described as subassemblies pursuant to the scope of the orders. Commerce notes that they are assembled after importation with additional components to create the final finished product. And this is, of course, in tandem with the discussion at 33 that we find the aluminum— Is there anything—this paragraph that you're reading to me from page 34 or appendix 1002, is there anything else besides that one paragraph? So when we look at the K1 sources, for example— I'm sorry, I'm having a hard time hearing you. I'm sorry. At page 34 of this decision, Commerce turns then to the K1 sources. It looks at the underlying petition and the ITC report. And looking at the petition, Commerce cites language saying that aluminum extrusions serve in a wide variety of applications and are incorporated into products specifically like windows and door frames, sills, curtain walls, and thresholds. Okay, so you said page 34. It confused me. You're talking about appendix 1002. I'm on the appendix.  Here's my problem is that you're now pointing us to the paragraph at the bottom of that page, right? Is that that paragraph falls after the discussion of whether they can be identified by end use. And we're going to—let's just assume for all of my questions that I disagree with Commerce's position on end use and that these can't be end use stuff if they include things that aren't aluminum, that I agree with the trade court on that. So how do we know this evidence in this last paragraph is about subassemblies versus end use? That's fair, Your Honor, in which case I think the interpretive framework that we all agree on and that you discussed with the government applies. If you were inclined to say that this first decision is not robust enough, there is a very robust decision. We march forward in time. We agree on that. Give us the appendix cite for that. Okay, so if we move forward to—this is the second decision overall, but the first remand redetermination. So we start at appendix 1453, which is Commerce's discussion of its new subassembly framework, which follows the Shannon decision. So this puts us back in the legal holding framework that we were discussing. This is a discussion of what subassembly means in the context of the scope as not just supported by but dictated by this Court's precedents, after which we get into a much more robust discussion of the facts of this case and why these products are subassemblies or parts. Starting with the scope requests, Commerce notes—this is at 1460 of the appendix— Columbia's thresholds are designed to fit standard door sizes. At appendix 1459—and I think this is really a key point for this appeal— Commerce also notes a laboratory report submitted by Worldwide detailing how thresholds are installed. The contents of the report are BPI, but suffice it to say, as Commerce did, that the report shows on its face and throughout that these thresholds do not function on their own but rather are incorporated into a larger downstream product. And what larger downstream product does Commerce find them incorporated into? It's a door. Sorry, it's not ambiguous on the face of that order. It's a door. These are door thresholds. Can I get parts of a door? I don't want to shift gears, but this is really a question I don't want to— I think the CIT judge made this argument, saying that this comes under finished merchandise, because he looked at the items outlined in the finished merchandise exceptions, and that's finished doors with glass, doors with glass or vinyl, picture frames with glass pane, and backing material and solar panels. None of those things operate independently either. I mean, you don't have a solar panel as— if a solar panel can be a finished product, then what's the difference between a door threshold in terms of finished product status, because it's something you can sell, purchase and sell independently. It doesn't have any—it doesn't operate unless it's put somewhere else. That's true of a solar panel, too, I assume. So can you—do you— I understand the question. Okay. And is it a real— because that's the way I'm understanding what the CIT said and what the finished product says. Okay. So what's your answer? I think there are two parts to that question, and I'm glad that you brought up solar panels as the example. This is the exact argument that this court passed on last year in China Custom Manufacturing. The issue in that case was, are solar panel mounts, which are undisputedly a piece that a solar panel is then mounted onto, are these finished merchandise, or are they a part? The appellant in that case made exactly this argument. It said, listen, solar panels are expressly excluded as finished merchandise. But everyone understands that the whole purpose of this mount is to take a solar panel and to put it on top of the mount, to attach it to this system, in which case this mount functions exactly the same as this panel. We, too, are finished. Judge Chen authored that opinion. He said, look, whatever— in very almost verbatim— a solar panel mount is undisputedly not a solar panel. So whatever the scope may say about solar panels and whether they are expressly finished merchandise doesn't apply. Okay, but how does that answer my question? Well, what's the difference between a solar panel and a door being finished products, picture frames with the glass pane, and a door threshold that we have here? It's a finished product. You can put it in a box and sell it on the shelf, and it doesn't have any independent value, but neither does a solar panel, because having a solar panel sitting on the living room table doesn't mean anything either. It's intended to be attached to something else in order to work. So what is the difference between a door threshold and a solar panel and a door frame or a picture frame? So the difference, I would say, is that a solar panel needs to be installed to work, but it doesn't mean that it needs other components to function. You need to put it somewhere. But it serves a purpose. Okay, what's a door threshold? Doesn't it just need to be installed to work its purpose? It needs a door to serve its purpose. Well, the solar panel needs something, needs to be attached to something. Right, so there's a frame. It has to be installed somewhere. I mean, theoretically, you could put the solar panel just on the roof. I'm not a solar panel expert. You can have doors, and you have door frames that serve a purpose without a threshold, but a threshold serves absolutely no purpose without it. You would never buy a threshold alone, which speaks to your second point. No, I don't buy a door alone to just have it sitting in my living room and not serving its purpose, just like I wouldn't buy a door threshold unless I was going to attach it to something. I only buy a door so I can attach it to the front frame or whatever for use. At which point, first of all, we're back at China custom manufacturing, which is we can't second, we're not respectfully in a position that we can second guess whether a door is finished because the scope says that it is. The problem with this is the scope has a list of things that are finished products and a list of things that are sub-assemblies that frankly don't seem to have much rhyme or reason because I think a door handle is not a final product, but all you need to make a door handle work is to put it in the hole in the door. But the scope itself says that that's either, I don't know what it is, it's either a part or it's a sub-assembly. If it's all aluminum and it's just an extrusion, but if it's aluminum with stuff on it that's not aluminum, I assume it's a sub-assembly. But it clearly calls it out as not a final product. So what are we to do? Is it really meant for us to try to analogize between these two? Or is it commerce's job to make a factual determination of which bucket it falls into? That's right, and that's exactly where it brings us back. I don't mean to be glib without saying that certain products are in and out. I would say that where the scope doesn't specifically speak to a product, although of course here we maintain that it does and that they're expressly in as end-use products, but where a scope doesn't specifically speak to a product, at least with regard to the sub-assembly provision and finished merchandise, we're back in substantial evidence territory, in which case we do defer to commerce's determination here. And I'll concede that line-drawing exercises are never easy, but I don't think that it's a stretch, and it certainly does not contradict the plain terms of the order or change them, which is the standard that the court would apply to determine whether this is lawful, to say that a door threshold, which is expressly in scope, is in fact in scope and a part for a door. Thank you. Thank you. Thank you. Good morning, Your Honors. My name is John Foote. I'm an attorney with Kelley Drive representing Worldwide Door. I just wanted to take a minute to introduce my client who's here with us in the courtroom today. This is Jerry Monstaoka. He is the CEO and President of Worldwide Door and his wife, Beth Monstaoka, who's the Executive Vice President of Worldwide Door. We've been working on this case for a long time together. For so long, we didn't recognize each other in the lobby. It's been over eight years since we started working on this, and they came to me with two products, and they had a door threshold that was just an aluminum extrusion. For a commercial application, you'd walk on it going into a grocery store, and they had these products that are... Can I ask you, Justice, speaking of that, just a general question that really shows my ignorance in this area of the law, which is since a portion of this door threshold is aluminum and the rest isn't, what... Assuming you were not to prevail in this case, is that just a question of portioning the amount of money or whatever in terms of the duties that come in? They are just assessed on the aluminum extraction portion of it. Is that correct? That is correct. There is, however, an issue with a secondary piece of litigation, a secondary finding by U.S. Customs related to evasion of anti-dumping duties, which hinges in significant part on whether or not... That's not part of our case. Which is not, but that's just so you understand. I appreciate that. Can you start with a few minutes on the standard of review to the extent that you will disagree with anything your friend said, because it seemed your arguments were kind of aligned. I think our arguments were substantially aligned, but what I do want to clarify is that the standard of review, the statutory standard of review supported by substantial evidence and otherwise in accordance with law, substantial evidence speaks to a determination by the agency that is supported by evidence within the record, and that is a determination that is of deference. The question of whether a scope determination is otherwise in accordance with law is a legal determination that is not reviewed with deference. So what does it mean for a scope determination to be otherwise in accordance with law? It's whether or not it is. Talk to us about this case. Do you agree with them that in this case, the issue of whether these door thresholds come within subassembly or finished product is a factual question for substantial evidence? That is a factual question for substantial evidence. That's right. But the problem that we had in this case... Well, yes. Can I just talk to you then?  Because I'm just going to skip right past Commerck. This is initial order on this because I don't think it's good enough. Yeah. Whether that is the ultimate conclusion is different. But once we get to its first remand determination, it has a fairly extensive discussion about why it thinks these are subassemblies. It describes them as intermediate products, which is our legal standard, which I don't think there's any real disagreement with or can be real disagreement with. And it cites to evidence. Why isn't that the end of the case that they've cited to evidence? I know that the trial court judge was very concerned about, well, why aren't these finished products like windows? But we've held that something is a subassembly. It can't be a finished product, right? And so if Commerck makes a factual determination, which you just said this is, and it's supported by substantial evidence, doesn't that end the inquiry? The answer is no because the legal error was refusing to go on and read the rest of the scope and consider whether it applied. I don't understand that. Okay. Let me just restate it because I think I said this, but we have said in at least two cases that if something is a subassembly, it is not a finished product, right? So if Commerck makes a determination that something is a subassembly, whether it says it's not a finished product or not, it is implicitly saying that it's not a finished product because it can't be both, right? It can either be one or the other. The problem is if Commerck defines the product in question as being a subassembly in such a way as would defeat the exemplars of the and that's what they've done here. They've defined subassembly to mean anything which then becomes a part of a larger whole and that would defeat... Well, in this case, they made very specific findings. I think if they said it as broadly as you did, then yes, they might have a problem. But they talk about it being installed as part of a larger... I think at some point they may use the word your unit or the like. I have no quality that the exemplars are very confusing. I don't understand the difference between a door handle and a window or solar panels and pieces of... I think wall curtains or something came up. It seems to be a list of exemplars that you could put in either bucket. But once we're past the specific exemplars as your friend said, then we have to look at what Commerck makes its actual determination on, don't we? What I would say is that when Commerck has been asked to answer the question is a product Finnish merchandise? In every instance, they have looked at the Finnish merchandise exclusion, they have looked at the product and they have evaluated that question on the merits. And this is what I told my client... I understand that, but I don't understand why that's necessarily legal error if they chose to go the other way and say we're going to look at whether it's a sub-assembly or not. It's legal error because of the fair code. They cannot interpret the scope in a manner contrary to its terms. And that's what this assessment did. But how are they interpreting it contrary to its terms if they're making a determination that it's a sub-assembly and a sub-assembly can't be a Finnish product? It is respectfully an interpretation of the scope contrary to its terms if they don't go on and look at the Finnish merchandise exclusion and make an assessment as to whether or not it describes the product. This is... But why is that necessary if they've gone through an exhaustive    analysis to conclude that it's a sub-assembly? Let me ask you... Sorry. I don't mean to jump in. If they had a sentence that said because we find this as a sub-assembly it cannot be a Finnish end product or whatever that language is and cited our cases that said they're mutually exclusive. Was that enough? At the time that they made this decision the only case that said that was Shenyang, Rwanda. And in Shenyang, Rwanda the critical fact the fact that this court has a new case that makes it very clear and we're battled by that. Which didn't... We absolutely are. But it didn't change the scope. Right? But I think we can agree that China Custom didn't change the scope. Right? It didn't actually change what the scope says. And in Shenyang, Rwanda you had a product that everyone agreed no one ever purchases on a stand-alone basis. And in this instance it is undisputed that you can purchase this product on a stand-alone basis. Can I... I don't know. I guess I'm a little unclear. If we... If I get a brief and it gives me three pages why this is a sub-assembly full stop and it is the most persuasive thing I've ever read. In fact, this thing cites it. Door threshold is a sub-assembly. Do I feel like I have to read another five pages in the brief about other provisions of the scope ruling to say it's not in those? I mean, can't you stop at some point and say... The answer is no. You must read the entirety of the scope. The scope is legally operative text. The scope is legally operative text. This is what defines the... If we have to decide whether something is A or B and we find conclusively that it's in A do we also have to say why it's not in B? You have to at least look at whether B might describe...  When they're mutually exclusive why? As a matter of logic if the... I agree if there could be overlap. If it could be in A and B simultaneously but that's not the case here, right? You agree that A and B are mutually exclusive so as a matter of logic if it's in A it is not in B. If I may if you consider a solo panel under the subassembly analysis that the Commerce Department advanced in this case that solo panel... Can we not talk about something that's an exemplar because as we've said those are I think inconsistent. Can you just answer the basic logic question? If A and B are mutually exclusive then if it's A it can't be B.  That is correct. But if A has been interpreted in such a manner as to write out of the scope language that is in the legally operative text and that's what Commerce did here... What language did it write out? The exemplars. The exemplars of the finished product. The exemplars of the finished merchandise. If you are a solo panel you must be assembled into a larger whole. It is of no value without an inverter or without a stand. Why is a threshold more like a solo panel than a door handle? And I'll answer that by saying the same reason that it is more like a solo panel than like the solo mount in China Custom or like the curtain wall unit. The answer is that this is an article of finished merchandise. This is a final article of Commerce that is bought and sold as is. Our opponents went to Lowe's during the pandemic    I don't know that you could buy the exact version of the door handle that was at issue in this case. I don't know whether you could.  matter. And also in that instance the door handles were pure aluminum extrusions with no additional aluminum extrusion components which is one of the  for the finished merchandise exclusion. I just want to understand the argument is that as a matter of law we could not decide this case just based on the fact that we agree with Commerce we think there is substantial evidence to support their conclusion their analysis that these come within the sub assembly. As a matter of law that we couldn't do that without reaching the second part of the scope ruling.  consideration I believe that interpreting the scope without considering whether or not an  applies is legal error pure and   The only reason the exclusion exists is to remove something from the scope that would otherwise be brought within the scope. That's the only reason you write an exclusion as a part of it. In your view in terms of what constitutes legal error in this context even if Commerce didn't do it we can do it on our own? I believe that the determination of whether or not this merchandise is covered by particular language of the scope inclusionary exclusionary that is a job for the agency. We're not talking about a conclusion we know their conclusion was that it's not a finished product. You're talking about the ultimate conclusion that it was a finished product. We're forgetting the under protest stuff right? We must forget the under protest stuff. The under protest language is simply language on  The existence of the protest is designed for one purpose and one purpose and that is to preserve the government standing on appeal in the event that they're required to do something they do not wish to do repeatedly at the court of international trade and then the court of  trade affirms the final result and then the court of  confirms the final result. And  the purpose of the process. And that's the form of the government standing on appeal. The government standing on appeal does not have an obligation to their third and fourth ones. That's correct. It's a sequential review.  you're guided by the claims of legal error. They claimed legal error in the form of   remand determination supported by substantial evidence. Is this just a reverse? Do we need to remand it for the CIT to do anything further? Does it need to go back to   question this remand  Let's assume we checked that argument. My question is if we find that commerce's first remand determination was supported by substantial evidence and is not contrary to  in other words, it should have been  by the CIT, procedurally what do we do? Do we reverse it and send it back to the CIT? Or is it just an outright reverse and we find that that remand determination is what applies going forward? You would affirm it. It doesn't have to be remanded back to the agency. You would be reversing the final determination of the court of international trade. And we don't have to send it back? I don't think it would have to be sent back. I'm going to ask your friend. I want to give you both a shot at responding. All right. Well, you've got this weird thing where you wanted to divide time for someone else to have a minute. Because we're at that point still. Thank you very much for your argument. Thank you. Thank you,  Jeremy Dutra on behalf of Columbia Aluminum. I just want to make a couple of points about  Aluminum. On the first remand determination about going through the subassembly and parts, the fact that the court pointed out, the trial court, they didn't look at the entire record. The court    can generally be done, but they didn't look at the product before them in the record evidence.  they did that, they made the determination that,  it is in fact a final product. That it is bought and sold in Home   it is installed in a building, on a floor, and it's unlike. But is that because they found your product is different from worldwide's or they finally addressed yours and the ones they did under protest? They finally addressed ours and it is different.  any reason to think that if they addressed yours specifically in the first room and determination that they would have found it factually distinct from the worldwide products? Without knowledge about, I don't know the answer to  but had they looked at our actual product and the  for our product on the record, they would not have reached the same determination because in China customs both of those applicants conceded that their products were in fact just parts for a final product and there was no independent value. Once they decided that and looked at the Columbia evidence, that is when they determined it was a final product. I will be open to protest. Thank you for your time. We will restore two minutes. Can you address that last point? How can we affirm the first remand determination as to  if there is no substantial evidence to support a finding that theirs are sub  assemblies even if they are clearly all the same kind of thing? Let me start by addressing the premise that  thresholds are not sub assemblies. I think what he said was the first remand determination does not discuss Columbia at all. Is that true? It is not true in the sense that there is a robust background about what commerce decided to include. They made intentional decisions about what parts to include as ready for  into doors. Those thresholds   sub assemblies.  is ample evidence that these are ready to be  in a downstream product. These are both. These are two for worldwide and two  Columbia. Columbia at appendix 1760.  explained that its thresholds are assembled as is into a door unit. 1760. At appendix 1851,  noted that its door thresholds are ready for immediate installation into a   expressly that its thresholds are   If you would like the worldwide quotes, there are appendix sites for those as well. I will note also the point that the CCM appellant conceded that their parts were sub assemblies. There is a concession to that effect as well. In the scope request submitted by both worldwide and  they argued expressly relying on a 2015 CIT decision called Rubbermaid that something can be both a sub assembly and finished merchandise. And the fact that the result of which, of course, is that if their parts are sub assemblies, they too could be  merchandise. As Judge Hughes noted, that is flatly now foreclosed by controlling law. And as to whether commerce needed to  both the  merchandise exclusion and the sub  framework, the question is binary. At the point that  determines that something is an  meaning that it consists of aluminum, extruded aluminum, and also other components, it is one of two things     supported under protest. Commerce specifically noted that because the CIT did not oppose the sub  determination, the sub assembly part is a burden. Thank you. Case is submitted.